UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 0:18-cv-60171-RNS

THE BANCORP BANK, a Delaware
Charterd banking corporation,
        Plaintiff,

Vs.

550 SEABREEZE DEVELOPMENT LLC,
A Florida limited liability Company, and
JAWOF 515 SEABREEZE, LLC, a Florida
Limited liability company
        Defendants.
_____/

**<u>DEFENDANT JAWOF 515 SEABREEZE, LLC'S OPPOSITION TO PLAINTIFF'S
EMERGENCY MOTION FOR ENTRY OF ORDER APPOINTING RECEIVER</u>**

## I. INTRODUCTION

Defendant, JAWOF 515 Seabreeze, LLC ("JAWOF"), responds in opposition to The Bancorp Bank's (Plaintiff) Emergency Motion for Entry Of Order Appointing Receiver (the "Motion")(D.E. 8).

Plaintiff seeks the appointment of a receiver in this foreclosure action to control two parcels of real property, one owned by Defendant, 550 Seabreeze Development, LLC, on which a hotel is being constructed, and an adjacent parcel owned by JAWOF which would provide parking for the hotel once completed, together with certain personal property and contractual rights as described in the Amended Complaint (collectively, the "Collateral"). Plaintiff indicates that it "might be willing" to advance additional funds for the hotel project, and also seeks the power to have a receiver sell the Collateral prior to the entry of any final foreclosure judgment. Despite the allegations in the Motion, the actual facts do not warrant the appointment of a

113975938.1

Receiver. Plaintiff's Motion should be denied.

## II. SUMMARY OF RELEVANT FACTS

In November 2013, Plaintiff extended construction loan financing to 550 Seabreeze for the construction of a hotel at 550 Seabreeze Boulevard[1] in Fort Lauderdale. 550 Seabreeze and JAWOF executed a Mortgage and Security Agreement, Exhibit 3 to the Amended Verified Complaint (D.E. 34), under which 550 Seabreeze pledged the real property upon which the hotel was to be built (the "550 Parcel"), as collateral for the obligations of 550 Seabreeze under the Promissory Note, and JAWOF pledged a vacant parcel (the "515 Parcel") on the west side of A1A in order to secure obligations under separate Guaranty and Suretyship Agreements (the "Guarantees").[2] Loan Agreement, Exhibit 1 to the Verified Amended Complaint, at §2.10.

On January 25, 2018 Plaintiff initiated this action by filing a Verified Complaint (D.E. 1) against Defendants to foreclose its first mortgage lien and security interest against the Collateral. Plaintiff filed its Emergency Motion for Entry of Order Appointing Receiver and Memorandum of Law in Support Thereof (D.E. 8) the following day.

As discussed below, many of the factual allegations in the Motion and the Amended Complaint are inaccurate. Most of the allegations of waste are unsupported and those defaults which exist do not support the appointment of a receiver.

---

[1] More commonly known as A1A.

[2] As noted above, 550 Seabreeze and JAWOF also executed other collateral documents giving Plaintiff, *inter alia*, a security interest in construction contracts for the hotel project and assignments of leases and rents to be generated from the real properties. No rents are being generated from either property.

2

### III. MEMORANDUM OF LAW IN SUPPORT OF OPPOSITION

#### A. Appointment of a Receiver is not Appropriate

"A district court's appointment of a receiver … is an extraordinary equitable remedy … [a]nd equity intervenes only where there is no remedy at law or the remedy is inadequate." *United States v. Bradley*, 644 F.3d 1213, 1310 (11th Cir. 2011); *Accord Bank of America, N.A. v. Florida Glass of Tampa Bay, Inc.*, No. 8:16-CV-2104-T-27AAS, 2016 WL 6778877 at *2 (Nov. 11, 2016, M.D. Fla.) (citing *Nat'l P'ship Inv. Corp. v. Nat'l Hous. Dev. Corp.*, 153 F.3d 1289, 1291 (11th Cir. 1998) and *Bradley*)). This extraordinary remedy "should be employed with the utmost caution and is justified only where there is a clear necessity to protect a party's interest in property, legal and less drastic equitable remedies are inadequate, and the benefits of receivership outweigh the burdens on the affected parties." *PNC Bank, N.A. v. Presbyterian Ret. Corp.*, No. 4–0461–WS–C, 2014 WL 6065778, at *3 (S.D. Ala. Nov. 13, 2014) (quoting *Netsphere, Inc. v. Baron*, 703 F.3d 296, 305 (5th Cir. 2012)). Federal courts consider a several factors when determining whether to appoint a receiver including:

> (1) the presence of a contractual receivership provision; (2) fraudulent conduct on the part of the defendant; (3) imminent danger that property will be lost or squandered; (4) the inadequacy of available legal remedies; (5) the probability that harm to the plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; (6) plaintiff's likelihood of success on the merits; and (7) whether the receivership will in fact serve the plaintiff's interests.

*Bank of America*, 2016 WL 6778877 at *3. A receivership provision in a mortgage is given weight in the Court's determination, but is not determinative. See *PNC Bank, NA v Presbyterian Ret. Corp.,* 2014 WL 12621231 at *4 ("[T]he discretionary, equitable nature of the receivership remedy … would be destroyed if a plaintiff could lock in a positive legal right to appointment of a receiver … [accordingly] Rule 66 … is not supplanted by a … contract enforcement approach"). *See also Fidelity Bank v. Key Hotels of Brewton, LLC*, 15-0031-WS-M, 2015 WL

3

*435035 \*3 n. 4 (S.D. Ala February 2, 2015)(rejecting argument that mortgagor's consent to receiver entitled plaintiff to appointment regardless of traditional factors for appointment of receiver) citing Waag v. Hamm*, 10 F. Supp. 2d 1191, 1193 (D. Colo. 1988)("receivership is not a positive right", but "is an extraordinary remedy equitable remedy that lies in the discretion of the court, justifiable only in extreme situations")(other citations omitted)*; Sterling Sav. Bank v. Citadel Dev. Co, Inc.*, 656 F. Supp. 2d 1248, 1262 (D. Ore. 2009)(clause in mortgage does not relieve bank from meeting its burden for appointment of receiver utilizing traditional factors for appointment of a receiver).[3] *See also 3376 Lake Shore, LLC, v. Lamb's Yacht Center, Inc.*, No. 3:14-CV-632-J-34PDB, 2014 WL 12621231 at \*3 (M.D. Fla. Dec. 8, 2014) (acknowledging that receivership provision in a mortgage is a factor, but denying appointing upon consideration of the remaining factors); *Bank of America*, 2016 WL 6778877 at \*3 (recognizing that mortgage contained provision stating a receivership shall be appointing in the event of default but refusing to appoint receivership).

In *Bank of America*, the court denied plaintiff's Emergency Motion For Appointment of Receiver after the court was not persuaded that there was an imminent danger that plaintiffs collateral would be "lost or squandered, the its legal remedies [were] inadequate, or there [was] a probability that harm to [plaintiffs] from denial of its motion would be greater than the injury to Defendants." 2016 WL 6778877 at \*3.

Here, the factors also weigh in favor of denying Plaintiffs motion. First, although the Mortgage and Security Agreement contains a contractual receivership provision, this factor does not mandate the appointment of a receiver. *Bank of America*, 2016 WL 6778877 at \*3; *3376 Lake Shore*, 2014 WL 12621231 at \*3.

---

[3] Plaintiff relied on this case in its Motion.

4

113975938.1

Second, there has been no, and plaintiffs have not alleged, fraudulent conduct on part of defendant.

Third, Plaintiff's allegations concerning perceived imminent harm to the Collateral are grossly exaggerated. For example, the general contractor on the project, Straticon, has not ceased all work and left the project, and the inside of the building is not being left exposed to the elements. On the contrary, Defendants have expended their own funds to keep Straticon on site and to have the exterior "EIFS" work completed in order to close the building and prevent deterioration from the ocean air. Defendants are also paying for 24-hour security at the site in order to prevent vandalism and the loss of any equipment or materials, electrical service is being provided, fencing still secures the entire perimeter of the property, safety barriers and warning signs are in place for balconies, open shafts and stairwells, and an OCIP[4] insurance policy remains in place. Contrary to Plaintiff's claims, warranties are not being lost. A warranty from Dryvit has been obtained and specially-tinted coating in the final seal coat for the substrate is being applied to all foam on the south and east side of the building as directed by the manufacturer.

Plaintiff's allegation that the Borrower lost its contract with the original hotel management company "and failed to provide plaintiff with documentation of a replacement" is puzzling at best. First, the original hotel management company has been gone since before the execution of the Amended and Restated Loan Agreement in August 2015. The new management company, identified in the August 2015 Agreement as Aston Hotels & Resorts Florida, LLC[5], remains in place. Significantly, however, Aston will have the ability to terminate its contract on

---

[4] An "owner controlled insurance program" is insurance maintained by the owner of property under construction in order to cover liability and loss related to construction activities.

[5] Amended and Restated Loan Agreement at §1.114.

5

113975938.1

24-hours' notice if a receiver is in fact appointed. The hotel is not unbranded as alleged. Preferred Hotels remains the brand. Senior Frogs, which was to have operated a bar and restaurant occupying the commercial space in the Hotel, withdrew almost two years ago due to its own financial difficulties. The Plaintiff has been aware of this development since it occurred, and cannot suddenly claim that the departure of Senior Frogs now justifies the appointment of a receiver.

Plaintiff refers to payment of project management fees in the amount of $1.8 million. Plaintiff acknowledges in a footnote that these fees were "arguably" permitted under the Loan Agreement. The acknowledgement does not mention that these fees are expressly provided for in the Budgets attached to Plaintiff's Motion, and Plaintiff does not point to any provision in the Loan Documents which indicates that the actual developers of the Hotel were not to be the recipients of the project management fees. Additionally, Plaintiff is aware that the Defendants' principals contributed approximately $1.8 million to fund administrative, legal, design and preconstruction costs, that Bancorp reimbursed the for these amounts following the loan closing in approximately December of 2013, and that and those reimbursed funds were then used for administrative, construction and other project-related costs.

The construction delays caused by Hurricane Irma were much more significant than indicated in the Plaintiff's Motion. Plaintiff's affidavit indicating that the delays "should have been" no more than a couple of months is simply inaccurate as will be shown at the hearing on the Plaintiff's Motion.

The Bank was recently provided documents concerning the status of the insurance claim referenced in the Motion. The claim remains pending and no insurance proceeds have been received to date.

There is significant equity in the Project. Defendants have been speaking with a group interested in purchasing the property for between $42 and $43 million, and Plaintiff is aware that discussions with third parties interested in providing additional construction financing were ongoing at the time that Plaintiff's filed its Complaint. Not surprisingly, those discussions were chilled by the commencement of this case. They are nonetheless ongoing. *See Fidelity Bank v. Key Hotels of Brewton, LLC*, 15-0031-WS-M, 2015 WL 1623952 (S.D. Ala. April 13, 2015) (denying to appoint receiver over hotel property with leaking roof, potential mold, and closure due to Fire Marshall's order based on violation of fire codes, where hotel operator was in discussions with new lenders and a new hotel franchise and appointment of a receiver, which would likely result in sale of property at fire sale price, would "almost certainly undermine (and perhaps even negate) [the owner's] attempts to restore the hotel and make [the lender] whole").

As to the fourth factor, the legal remedies available to Plaintiff are not inadequate. Plaintiff may continue with the foreclosure proceedings until there is final judgment without harm to its collateral. Legal remedies must be inadequate, not merely inconvenient, for a receiver to be considered. *Wells Fargo Bank v. Raymond & Assoc's., LLC*, 2015 WL 1931386 at *3 (S.D. Ala. April 27, 2015).

The injury to JAWOF if the Motion is granted will significantly outweigh the injury to Plaintiff if the Motion is denied. Plaintiff's interest are protected as set forth above. JAWOF will, however, lose its investment if a receiver is appointed, especially if that receiver is given the requested and unwarranted power to sell the project prior to the entry of a final judgment.

JAWOF does not deny that the December and January interest payments have not been made, but the mere failure to make a payment does not justify the appointment of a receiver. Moreover, it is not at all clear that Plaintiff will succeed on the merits as to the 515 Parcel. As

7

113975938.1

noted above, the 515 Property was pledged as collateral for performance under certain Guarantees. The Guarantees are not attached as Exhibits to the Amended Verified Complaint, and the pleading is devoid of any allegations regarding the Guarantees. As a result, that Complaint fails to include "a short and plain statement showing that Plaintiff is entitled to relief", and therefore fails to state a claim for the foreclosure of the Mortgage as to the 515 Parcel or related collateral in connection with the loan at issue.

### B.  Power to Sell the Property Prior to Judgment

As noted above, the facts do not justify the appointment of a receiver over the project. Even if the Court finds otherwise, the power to sell the mortgaged properties prior to the entry of final judgment should be denied

In its Motion, Plaintiff requests that a Receiver be appointed with power to sell the Project prior to the entry of any foreclosure judgment. Plaintiff also acknowledges, however, that any receiver must operate within the confines of Florida law. 28 U.S.C. §959(b) ("[A] … receiver … appointed in any cause pending in any court of the United States … shall manage and operate the property in his possession as such … receiver … according to the requirements of the valid laws of the State in which such property is situated…"). *Resolution Trust Corp. v. Fountain Circle*, 799 F. Supp. 48, 50 (N.D. Ohio 1992).

Florida law does not permit a receiver appointed during the prosecution of a foreclosure action to sell property prior to the entry of a final judgment of foreclosure unless expressly agreed to. In *Shubh Hotels Boca, LLC v. Federal Deposit Ins. Corp.*, 46 So. 3d 163 (Fla. 4th DCA 2010), the Florida appellate court reversed a lower court's receivership order which authorized the receiver to sell the property prior to a final foreclosure judgment since allowing a sale prior to final judgment would have abridged the mortgagors' right of redemption under Fla.

8

Statute §45.0315. The clause in *Shubh* only authorized a receiver to operate and manage the property and contained no express power to sell. Similarly, the Mortgage in this case only refers to a receiver having the power to "perform all acts permitted Mortgagee under section 15(b)(1) above and such other powers which may be necessary or customary in such cases for the protection, possession, control, management and operation of the Property…" . Mortgage and Assignment of Rents, Exhibit 3 to Amended Verified Complaint at section 15(b)(3). Section 15(b)(1) in turn permits plaintiff to collect rents and to "do any act which Mortgagor could do in connection with *the management and operation* of the Property". (emphasis added). Plaintiff's argument that Defendants would be permitted to sell the property as part of their "operation and management" thereof cannot be sustained.

WHEREFORE, Defendant, JAWOF 515 Seabreeze, LLC respectfully request that this Court enter its order denying Plaintiff's Motion, and provide such other relief as is just and proper.

Respectfully submitted,

__/s/ Niall T. McLachlan_____
Niall T. McLachlan
Florida Bar No. 059552
E-mail: nmclachlan@carltonfields.com
Carlton Fields Jorden Burt, P.A.
100 SE 2nd Street, Suite 4200
Miami, FL 33131
Telephone:  305-530-0050
Facsimile:  305-530-0055
*Attorneys for Defendant, JAWOF 515 Seabreeze LLC*

9

**CERTIFICATE OF SERVICE**

       I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via CM/ECF to the following on this 20th day of February, 2018 to:

| | |
|---|---|
| Mark J. Wolfson, Esq.<br>Foley & Lardner, LLP<br>100 North Tampa Street, Suite 2700<br>Tampa, FL 33602<br>Tel: 813-229-2300<br>mwolfson@foley.com<br>crowell@foley.com<br>Counsel for Plaintiff | Peter E. Shapiro, Esq.<br>Shapiro Law<br>8551 West Sunrise Boulevard<br>Suite 300<br>Plantation, FL 33322<br>T: 954-315-1157<br>F: 954-452-3311<br>Email: pshapiro@shapirolawpa.com<br>Counsel for 550 Seabreeze Development, LLC |

Jennifer Olmedo-Rodriguez, Esq.
Buchanan Ingersoll & Rooney, PC
100 SE Second Street
Suite 3500
Miami, Florida 33131
Tel: 305-347-4087
Jennifer.olmedo-rodriguez@bipc.com
Counsel for 550 Seabreeze Development, LLC
(Limited Appearance)

                                                /s/ Niall T. McLachlan